IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF OHIO
EASTERN DIVISION

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, | ) | CASE NO.: 1:23-CR-00457 |
| | ) | |
| Plaintiff, | ) | JUDGE DAVID A. RUIZ |
| | ) | |
| v. | ) | |
| | ) | |
| ANTONIO CROSS, | ) | GOVERNMENT'S SENTENCING |
| | ) | MEMORANDUM |
| Defendant. | ) | |

Now comes the United States of America, by and through its attorneys, Rebecca C. Lutzko, United States Attorney, and Matthew W. Shepherd, Assistant United States Attorney, and hereby files this sentencing memorandum. For the reasons set forth below, the United States requests this Honorable Court impose a sentence of 37 months imprisonment, the high end of the guidelines range agreed to by the parties in the Plea Agreement.

I.  **OFFENSE CONDUCT**

On August 23, 2024, Defendant Antonio Cross ("the Defendant") was one of seven defendants charged with multiple firearms-related offenses in a 37-count indictment alleging a conspiracy to sell large quantities of firearms on the streets of Cleveland, Ohio, in July and August 2023. Cross was charged in five counts: Count 1, Conspiracy to Engage in the Business of Importing, Manufacturing, or Dealing in Firearms Without a License in violation of 18 U.S.C. §§ 371 and 922(a)(1)(A); Count 4, Engaging in the Business of Importing, Manufacturing, or Dealing in Firearms without a Federal Firearms License in violation of 18 U.S.C. § 922(a)(1)(A); Count 8, Conspiracy to Engage in Firearms Trafficking in violation of 18 U.S.C. § 933(a)(1) and (3); Count 11, Trafficking in Firearm in violation of 18 U.S.C. § 933(a)(1); and Count 28, Aiding and Abetting the Transfer of a Machine Gun in violation of 18 U.S.C. §§ 922(o) and 2.

Altogether, the seven defendants sold a combined total of more than 50 firearms to undercover agents, with individual members of the conspiracy responsible for selling varying amounts of firearms.  The nature of the conspiracy was that individuals came and went from the conspiracy as they had firearms to sell.  The least involved sold only one firearm, while the most involved sold 20 or more.  Cross fell in the middle of this spectrum, as he personally sold seven firearms.  Typically, one of the defendants, such as Cross, would contact an undercover agent and arrange to sell undercover agents one or more firearms.  They would then meet the undercover agent in person and complete the transaction.  When multiple defendants sold firearms at the same time to the undercover agents, the defendants typically each brought their own firearms to sell, separately negotiated sales prices for the firearms each brought, and kept the profits themselves.  Cross met with undercover agents to sell firearms on three occasions.

On July 24, 2023, in coordination with a juvenile, Cross sold three firearms to undercover agents: 1) a Charter Arms Shelton (CT Charter 2000), Model Pink Lady Off Duty, .38 caliber revolver, serial number 16-06967; 2) a Glock, Inc., Model 48, 9 mm pistol, serial number BKMV617; and 3) a Bersa, Model Thunder 380, .380 caliber pistol, serial number A62115.  On the same date, co-defendant Maurice Sterett also sold a firearm to the undercover agents.

On August 3, 2023, Cross sold two firearms to undercover agents: 1) an American Tactical Imports, Model OMNI Hybrid, multi-caliber pistol, serial number NS281428; and 2) a Masterpiece Arms, Model Defender, 9 mm caliber pistol, serial number FX38007. Co-defendant Jaivon Williams also sold one firearm, which was modified with a "switch" making it capable of firing fully automatic.

On August 8, 2023, Cross sold two more firearms: 1) a Smith & Wesson, Model M&P 16, 5.56 mm rifle, with an obliterated serial number; and 2) a Glock, Model 19, 9 mm pistol,

serial number BTEG015. Jaivon Williams also sold two firearms, and a third individual, Andre Padgett, sold three firearms.

The Grand Jury returned the indictment charging Cross and his co-defendants on August 23, 2023. On August 30, 2023, agents arrested Cross and executed a search warrant at his residence. During the execution of the search warrant, agents recovered five firearms, as well as a quantity of marijuana.

On March 15, 2024, the Defendant pled guilty to Count 11 of the Indictment, which charged him with Trafficking in Firearms in violation of 18 U.S.C. § 933(a)(1), pursuant to a written plea agreement. The Defendant admitted that he trafficked seven firearms total: three on July 24, 2023; two on August 3, 2023; and two on August 8, 2023. The government agreed to dismiss the other counts at sentencing.

## II. GUIDELINE CALCULATION

### A. GUIDELINE CALCULATIONS CONTAINED IN THE PLEA AGREEMENT

The United States and the Defendant entered into a plea agreement in this matter whereby the parties stipulated to the advisory guideline calculation for the offense level under the United States Sentencing Guidelines. The calculations in the plea agreement were based on Cross's responsibility for the firearms he personally sold, received money for, and admitted to selling in the plea agreement. (R. 80: Plea Agreement, PageID 394). The government also agreed to recommend that Cross's offense level be reduced by three levels for acceptance of responsibility pursuant to U.S.S.G. § 3E1.1(a) and (b). (*Id.*). The parties agreed to the following offense level calculation:

| **Count 11: Trafficking in Firearms, 18 U.S.C. § 933(a)(1)** | | |
|---|---|---|
| Base offense level | 12 | U.S.S.G. § 2K2.1(a)(7) |
| 3-7 Firearms | +2 | U.S.S.G. § 2K2.1(b)(1)(A) |
| Obliterated Serial Number | +4 | U.S.S.G. § 2K2.1(b)(4) |
| Trafficking of firearms | +4 | U.S.S.G. § 2K2.1(b)(5) |
| **Subtotal** | **22** | |
| Acceptance of Responsibility | -3 | U.S.S.G. § 3E1.1(a) and (b) |
| **Total** | **19** | |

Thus, the total offense level under the plea agreement is 19. This calculation differs from the calculation contained in the Presentence Investigation Report ("PSR"). The calculations in the plea agreement were based on the firearms that Cross personally sold and that were the basis of his guilty plea to firearms trafficking. The PSR includes as relevant conduct the firearms that were sold by co-defendants during the transactions on July 24, August 3, and August 8, as well as the firearms found in Cross's residence on August 30 that he did not sell. As described below, this results in a significantly higher offense level. Basing the offense level on just the firearms personally sold by the Defendant results in a total offense level of 19. With zero criminal history, Cross's Criminal History Category is I. (R.115: PSR, PageID 640). An offense level of 19 and Criminal History Category I results in a range of 30-37 months.

B.     GUIDELINE CALCULATIONS CONTAINED IN THE PSR

The final PSR filed on June 18, 2024, sets forth the following offense level calculation at paragraphs 36-48. (R. 115: PSR, PageID 638-39):

| **Count 11: Trafficking in Firearms, 18 U.S.C. § 933(a)(1)** | | |
|---|---|---|
| Base offense level | 18 | U.S.S.G. § 2K2.1(a)(5) |
| 8-24 Firearms | +4 | U.S.S.G. § 2K2.1(b)(1)(B) |
| Obliterated Serial Number | +4 | U.S.S.G. § 2K2.1(b)(4) |
| Trafficking of Firearms | +4 | U.S.S.G. § 2K2.1(b)(5) |
| Possession of Firearm in Connection with a Felony Offense | +4 | U.S.S.G. § 2K2.1(b)(6) |
| **Subtotal** | **34** | |
| Acceptance of Responsibility | -3 | U.S.S.G. § 3E1.1(a) and (b) |
| **Total** | **31** | |

4

Thus, the PSR calculates a total offense level of 31, which is significantly higher than the offense level stipulated to in the plea agreement. The wide difference is based on the attribution to Cross as relevant conduct of the firearms sold by others on July 24, August 3, and August 8, and the firearms found during the execution of the search warrant at his residence on August 30. The inclusion of these firearms increases the offense level in several important ways:

1. By including the firearm that Jaivon Williams sold on August 3 that was modified to fire fully automatic, the base offense level is set at 18, instead of 12, as it is in the plea agreement;

2. The inclusion of the additional firearms sold by Sterett, Jaivon Williams, and Padgett, and the firearms found in Cross's residence increase the total number of firearms from the 3-7 category to the 8-24 category, resulting in a four-level increase instead of the two-level increase in the plea agreement; and

3. The inclusion of the firearms found during the search of Cross's residence on August 30 results in a four-level increase that was not included in the plea agreement calculation.

Thus, the effect of not limiting the calculation to the firearms that Cross personally sold, which formed the basis of the offense to which he pled guilty, is to increase his offense level by 12 levels. With an offense level of 31 and Criminal History Category of I, the PSR finds the advisory guidelines range to be 108-135 months, (R.115: PSR, PageID 644), which is a significant increase from the calculation in the plea agreement.

C. OBJECTIONS TO THE PSR

The Government requests that this Court adopt the guidelines calculation agreed to by the parties in the plea agreement. The calculations in the plea agreement were the result of extensive negotiations between the parties after the indictment that included re-evaluating all of the

evidence in the case, as well as the strengths and weaknesses of the prosecution and the defense. As in every case, trial posed certain risks for each party. Ultimately, the intent of the parties in fashioning the plea agreement was to hold Cross accountable for the conduct he personally committed by basing it on the firearms he personally sold. Consistent with the plea agreement, the Government submitted objections to the calculations that were inconsistent with the plea agreement. Although the Government understands the reasoning for the PSR's calculations and attribution of relevant conduct to Cross, consistent with the plea agreement, the government maintains the following objections to the PSR and requests that the Court adopt the calculations in the plea agreement:

**Paragraph 36, Base Offense Level.** Consistent with the plea agreement, the Government asserts that the appropriate base offense is 12, not 18. The PSR assigned a base offense level of 18 based on finding that the offense involved a firearm described at 26 U.S.C. § 5845(a), specifically a machine gun. As noted above, the intent of the plea agreement was that the Defendant be held responsible for the firearms that he personally sold. The machine gun in question was possessed and sold by a co-defendant, Jaivon Williams, and not Cross, on August 3, 2023.

**Paragraph 37, Specific Offense Characteristics.** The PSR found that the offense level should be increased by four levels for committing an offense involving 8-24 firearms pursuant to U.S.S.G. § 2K2.1(b)(1)(B). This was calculated by including as relevant conduct the firearms sold by others on July 24, August 3, and August 8, and the firearms found in Cross's residence on August 30. As already noted, the plea agreement holds Cross responsible for those firearms he personally sold. The firearms sold by others on those dates were brought to the transactions separately by those defendants, who then independently negotiated their sale and kept the money from the transactions.

6

Regarding the firearms found in Cross's residence, under the unique facts of this case those firearms were not possessed unlawfully, and the Government does not have evidence that Cross attempted to sell those specific firearms or that the transactions occurred in his residence. The Sixth Circuit has held that "only conduct that is criminal in nature qualifies as relevant conduct under § 1B1.3." *United States v. Henry*, 819 F.3d 856, 865 (6th Cir. 2016). Cross was not a prohibited person at the time he possessed the firearms, and they were not themselves illegal, as they were not machine guns or of an illegal length.[1]

**Paragraph 40, Specific Offense Characteristics**. The PSR applies a four-level increase pursuant to U.S.S.G. § 2K2.1(b)(6)(B) for using or possessing a firearm or ammunition in connection with another felony offense. According to the PSR, this enhancement is based on the firearms and marijuana recovered from the Defendant's residence during the execution of a search warrant on August 30, 2024. (R. 115: PSR, PageID 639). According to the PSR, these firearms were relevant conduct to the conviction for firearms trafficking and were possessed in furtherance of the felony offense of possessing with intent to distribute marijuana. As indicated above, the intent of the plea agreement was to hold Cross responsible for the firearms that he sold. The government does not have evidence that Cross sold or attempted to sell any of the

---

[1] The Sixth Circuit decision in *United States v. Partington*, 21 F.3d 714 (6th Cir. 1994), would seem to require a different conclusion. In *Partington*, the defendant pled guilty to engaging in the business of dealing in firearms without a license in violation of 18 U.S.C. § 922(a)(1)(A). *Id.*, at 716. The district court found that the defendant's possession of a sawed-off rifle that the defendant did not attempt to sell was appropriately considered as relevant conduct to the offense of dealing in firearms without a license. *Id.*, at 719. A major distinction between the facts in this case and Partington is that possession of the firearm in Partington was itself illegal because the firearm was too short. The court also noted that the "the rifle was in the location where defendant conducted some of his illegal firearm transactions." *Id.*, at 719. Here the firearms found in Cross's residence were not themselves illegal, and Cross did not conduct any transactions from his residence.

7

firearms found at his residence. Further, as explained above his possession of the firearms was not illegal, and non-criminal conduct is not considered relevant conduct. *See Henry*, 819 F.3d at 865.

Because of these specific objections, the Government further objects to the offense and advisory guidelines calculations at paragraphs 44, 48, and 79, and requests that the Court adopt the calculations in the plea agreement.

### III. <u>SENTENCING FACTORS 18 U.S.C. § 3553(A)</u>

The government argues that this Court should take all of the 3553(a) factors into account when fashioning a sentence.

Upon properly calculating the advisory guideline range, this Court is required to follow 18 U.S.C. § 3553(a), which provides:

> This Court is required to consider the following factors in determining the sentence.
>
> (a) Factors to be considered in imposing a sentence.--The court shall impose a sentence sufficient, but not greater than necessary, to comply with the purposes set forth in paragraph (2) of this subsection. The court, in determining the particular sentence to be imposed, shall consider--
>
>> (1) the nature and circumstances of the offense and the history and characteristics of the defendant;
>>
>> (2) the need for the sentence imposed--
>>
>>> (A) to reflect the seriousness of the offense, to promote respect for the law, and to provide just punishment for the offense;
>>>
>>> (B) to afford adequate deterrence to criminal conduct;
>>>
>>> (C) to protect the public from further crimes of the defendant; and
>>>
>>> (D) to provide the defendant with needed educational or vocational training, medical care, or other correctional treatment in the most effective manner;

    (3)  the kinds of sentences available;

    (4)  the kinds of sentence and the sentencing range established for--

    (5)  any pertinent policy statement--

    (6)  the need to avoid unwarranted sentence disparities among defendants with similar records who have been found guilty of similar conduct; and

    (7)  the need to provide restitution to any victims of the offense.

In this case, the most prominent factors are the offense conduct and Cross's personal history and characteristics. The offense conduct is very serious, as Cross sold multiple firearms on the streets of Cleveland, including a firearm with an obliterated serial number. Cross was part of the network of firearms distribution that fuels gun violence across the community. By selling firearms on the streets, under circumstances in which he has reason to know that the firearms will be used to commit crimes, Cross provided the tools for criminals to prey on innocent victims.

Balanced against the seriousness of the offense is Cross's personal history, in particular his complete lack of a prior criminal history. This case is Cross's first criminal conviction. From the PSR, it also appears to be his first involvement with the criminal justice system of any kind. The PSR also describes the difficulties faced by Cross and his family growing up.

The result of balancing these factors leads the Government to recommend a sentence of 37 months, which is the high end of the advisory guidelines range calculated in the plea agreement. Even if the Court finds that the guidelines calculation in the PSR is correct, the Government requests that the Court determine that under the Section 3553(a) factors, the appropriate sentence is the high end of the range calculated in the plea agreement. The

9

Government believes that this sentences appropriately takes into account the offense conduct and Cross's lack of criminal history.

## IV. CONCLUSION

For these reasons and those to be articulated at the sentencing hearing, the Government requests a sentence of 37 months, which is the high end of the advisory guidelines range calculated by the plea agreement.

                        Respectfully submitted,

                        REBECCA C. LUTZKO
                        United States Attorney

By:   /s/ Matthew W. Shepherd
       Matthew W. Shepherd (OH: 0074056)
       Assistant United States Attorney
       United States Court House
       801 West Superior Avenue, Suite 400
       Cleveland, OH 44113
       (216) 622-3873
       (216) 522-8355 (facsimile)
       Matthew.Shepherd@usdoj.gov